IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MICRO FOCUS (US), INC. and MICRO
FOCUS IP DEVELOPMENT LIMITED,

    Plaintiffs,

v.

INSURANCE SERVICES OFFICE, INC.,

    Defendant.

Civil Action No. 15-252-RGA

MEMORANDUM OPINION

Elizabeth M. McGeever, Esq., PRICKETT, JONES & ELLIOTT, P. A., Wilmington, DE, attorney for Plaintiffs.

Brian R. Lemon, Esq., McCARTER & ENGLISH, LLP, Wilmington, DE, attorney for Defendant.

August 31, 2015

**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court is Defendant's motion to dismiss (D.I. 5) all counts in Plaintiffs' complaint (D.I. 1) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs' complaint asserts two breach of contract claims and a copyright infringement claim.

## I. BACKGROUND

I will summarize the relevant allegations of the complaint.

Plaintiffs (collectively, "Micro Focus") license and support business enterprise computer software. (*Id.*). Defendant Insurance Services Office, Inc. ("ISO") is a risk assessment services provider. (*Id.* at 2).

Micro Focus alleges to be the author and owner of original, proprietary software programs known as Net Express v3.1 SP1 ("Net Express"), Application Server for Net Express v3.1 SP1 ("Application Server"), Net Express v5.1, and Server for COBOL. (D.I. 1 at 3, ¶ 8). Application Server, Net Express v5.1, and Server for COBOL are registered copyrights under Title 17 of the United States Code. (*Id.*, ¶ 9). Net Express's copyright registration application is pending with the U.S. Copyright Office. (*Id.*).

Micro Focus licenses its Net Express and Net Express v5.1 software for use developing COBOL applications. (D.I. 1 at 6, ¶ 27). It also licenses its Application Server and Server for COBOL software for deploying those applications. (*Id.*). ISO has incorporated Micro Focus's software products into its Company Edit Packages ("CEP") software and ClaimSearch Israel database. (D.I. 1 at 6). Specifically, all versions of CEP were developed using Net Express, and ClaimSearch Israel was developed using Net Express v5.1. (D.I. 1 at 6, ¶ 29, 32). As a result, CEP's proper deployment depends on Net Express's use of Application Server. (D.I. 1 at 6, ¶

2

30). For ClaimSearch Israel, the software for deployment is Server for COBOL. (D.I. 1 at 6, ¶ 32).

The End User License Agreement ("EULA") applicable to Net Express v5.1 provides, "From commencement of this License Agreement, the 'Micro Focus Software' shall also include, and this License Agreement shall apply to, any prior versions of the Micro Focus Software licensed by Licensee." (D.I. 1-1 at 2). According to Micro Focus, this means that "both Net Express v5.1 and the prior Net Express licensed by ISO are governed by the EULA under which Micro Focus issued Net Express v5.1 to ISO." (D.I. 1 at 7, ¶ 34).

ISO markets and provides its CEP family of products to its customers and also provides ISO customers with access to ClaimSearch Israel database. (D.I. 1 at 4, ¶¶ 16-17, at 5, ¶¶ 24-25). Micro Focus first claims that ISO has exceeded its authorized use of Net Express by providing copies of CEP to at least 250 of its customers without purchasing Application Server deployment licenses adequate to support its deployment of CEP. (D.I. 1 at 7, ¶¶ 37-38). Micro Focus also claims that "ISO has exceeded its authorized use of Net Express v5.1 and Server for COBOL by permitting third parties to access ClaimSearch Israel," thereby deploying Server for COBOL without licenses. (D.I. 1 at 8, ¶ 41).

## II. LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual allegations must be enough to raise a right to

3

relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

## III. ANALYSIS

### A. Counts I and II: Breach of Contract – Insufficient Licenses for Deployment of CEP and ClaimSearch Israel

In order to survive a motion to dismiss for failure to state a breach of contract claim, a plaintiff must establish (1) the existence of a contract; (2) breach of an obligation imposed by the contract; and (3) resulting damage to the plaintiff. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

#### 1. Existence of a Contract

Defendant argues that the complaint fails to demonstrate the existence of a viable contract between Micro Focus and ISO. Defendant maintains that the alleged contract—the EULA associated with Net Express v5.1—is not signed by the parties, but is rather a "generic software license accompanying a software upgrade that is unilaterally imposed by the licensor." (D.I. 6 at 7). ISO argues that there are no well-pleaded facts supporting the existence of a contract because Micro Focus failed to establish that ISO accepted the EULA's terms. (*Id.*).

The EULA's first paragraph reads:

4

> IMPORTANT: MICRO FOCUS IS PROVIDING THIS SOFTWARE FOR YOUR USE SUBJECT TO YOUR AGREEMENT TO BE BOUND BY THE TERMS AND CONDITIONS SET FORTH BELOW. IF YOU DO NOT AGREE TO THE TERMS OF THIS AGREEMENT BY CLICKING ON SETUP'S ACCEPT BUTTON, YOU WILL NOT BE ABLE TO USE THE SOFTWARE. BY CLICKING SETUP'S ACCEPT BUTTON YOU ACKNOWLEDGE THAT YOU HAVE READ THIS AGREEMENT, UNDERSTOOD IT, AND AGREE TO BE BOUND BY ITS TERMS AND CONDITIONS.

(D.I. 1-1 at 2).

Given that Micro Focus has alleged ISO's use of Net Express v5.1—the upgraded version of Net Express—it is reasonable to infer that ISO clicked the accept button. ISO does not argue that such a click-to-accept agreement is not enforceable under applicable law. I must accept that all the factual allegations in the complaint are true, and take them in the light most favorable to plaintiff. *Wallach v. Eaton Corp.*, 814 F. Supp. 2d 428, 434 (D. Del. 2011). As a result, ISO's assertion that Micro Focus has not alleged the existence of a contract is rejected.

### 2. Breach of Contractual Obligations

Defendant argues that even if the EULA were a contract between Micro Focus and ISO, Plaintiffs did not identify any breach of a contractual obligation. (D.I. 6 at 8).

#### a. Unspecified Licensing Models in the EULA

Defendant first claims that the EULA provides seven different licensing options and states that the "applicable License Option to be purchased by Licensee for the Micro Focus Software shall be identified in the Product Order." (D.I. 6 at 7-8; *see* D.I. 1-1 ¶¶ 1, 1.1, 1.2, 1.3, 1.4). Defendant further argues that since Plaintiffs failed to produce the product order associated with the EULA, Plaintiffs cannot specify which one of the licensing terms is operative. Without the terms, Defendant argues that Plaintiffs cannot identify any breach. (D.I. 6 at 8). In response, Micro Focus argues that the EULA terms that are most salient to the case at hand are contained in the EULA's § 1 ("Grant of License"), which apply irrespective of the particular license

5

ordered by ISO. The EULA provides that "Licensee shall have the right to use the Micro Focus Software solely for its own internal use and benefit." (D.I. 1-1 ¶ 1).

In addition, Micro Focus argues that both breach of contract claims seek to recover for ISO's unauthorized deployment of Micro Focus's software and only § 1.2 of the EULA covers the deployment licenses. (D.I. 1-1 ¶ 1.2). According to Micro Focus, the EULA thus does contain material terms that Defendant has allegedly breached by providing the Micro Focus software embedded in ISO's software to ISO's customers. (*See* D.I. 1, ¶¶ 47, 53). Defendant raises the question of whether "internal use and benefit" encompasses providing the software to one's own customers. That is a question for another day. Accordingly, Plaintiffs' allegation that providing the Micro Focus software embedded in ISO's software to ISO's customers constitutes a breach of the EULA is facially plausible and, therefore, is sufficient for purposes of Rule 12(b)(6).

### b. Sufficiency of Factual Basis for Unauthorized Use of a Particular Software

Defendant also asserts that Micro Focus does not "provide sufficient facts in the complaint to support its basic premise that ISO makes unauthorized use of any particular Micro Focus software in [ISO's] CEP and ClaimSearch Israel software products" and particularly "provides no factual aver[ment]s, for example, as to how or to what extent [a Micro Focus software] is employed, the effect of such employment on the ClaimSearch Israel software product, or the period of time of such employment." (D.I. 6 at 8). However, a detailed factual allegation concerning the extent and effect of the breach is not required by the plausibility standard for a motion to dismiss analysis. In the pending case, Micro Focus claims that detailed information concerning the inner working of ISO's software is, not surprisingly, lacking at the pleading stage. (D.I. 13 at 17). I cannot reasonably conclude that the lack of detailed

6

information on the extent and effect of ISO's unauthorized use of Micro Focus products renders Plaintiffs' claim implausible. As a result, I conclude that Plaintiffs' assertions are sufficient to state a claim for breach of contract. Defendant's motion to dismiss Counts I and II for failure to state a claim will therefore be denied.

### B. Count III: Copyright Infringement – Violation of 17 U.S.C. § 501

To state a copyright infringement claim, a complaint has to assert two essential elements: "ownership of copyright, and copying by the defendant." *Dam Things from Denmark v. Russ Berrie & Co. Inc.*, 290 F.3d 548, 561 (3d Cir. 2002). To survive a motion to dismiss, a claim must allege: "(1) which specific original works are the subject of the copyright claim; (2) ownership of the copyrights in those works; (3) registration of the works in question with the Copyright Office in accordance with 17 U.S.C. §§ 101, et seq.; and (4) by what acts the defendant infringed the copyright." *Key Consolidated 2000, Inc. v. Troost*, 432 F. Supp. 2d 484, 488 (M.D. Pa. 2006).

#### 1. Registration as a Requirement for Raising a Copyright Claim

Defendant argues that Micro Focus fails to plead a copyright infringement claim with regard to Net Express because its application is still pending with the U.S. Copyright Office. (D.I. 6 at 4; *see* D.I. 1 at 3, ¶ 9). 17 U.S.C. § 411(a) requires that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." Courts are divided as to whether a pending application to the Copyright Office (the "application" approach) or an issuance of the registration (the "registration" approach) is required to file a copyright infringement claim. *See Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 615-16 (9th

7

Cir. 2010) (recognizing that the Fifth and Seventh Circuits have adopted the application approach, whereas the Tenth and Eleventh Circuits have adopted the registration approach).

The Third Circuit has not yet addressed this issue, but did hold (in a non-precedential opinion) that a plaintiff could not establish a prima facie case of infringement because it did not hold a "registered" copyright. *Dawes-Lloyd v. Publish America, LLLP*, 441 F. App'x 956, 957 (3d Cir. 2011) (per curiam). *Dawes-Lloyd* is distinguishable from the case at hand, because the plaintiff there had not applied for a copyright. Thus, even if precedential, it would be dicta. Nevertheless, the Third Circuit's analysis does seem to suggest favoring the "registration" approach. The trend among district courts in this Circuit has been to adopt the "registration" approach for copyright infringement pleading standard. *See Browne v. Zaslow*, 2015 WL 2069370, at *5 (E.D. Pa. May 5, 2015); *North Jersey Media Grp., Inc. v. Sasson*, 2013 WL 74237, at *2 (D.N.J. Jan. 4, 2013).

I will join the prevailing trend in this Circuit and adopt the "registration" approach. Micro Focus does not allege a registered copyright on Net Express. As a result, I will dismiss Plaintiffs' copyright infringement claim with regard to Net Express.

### 2. Proper Pleading of the Ownership of the Alleged Copyright-protected Material

Defendant also avers that Micro Focus fails to properly plead its ownership of the alleged copyright-protected material—the Application Server for Net Express. (D.I. 6 at 5). Specifically, Defendant argues that Plaintiffs fail either to identify by number or to provide a copy of the copyright registration for the Application Server. (*Id.*). Moreover, the registration on file at the Copyright Office for Application Server identifies neither of Plaintiffs as the owner. (*Id.*).

8

While "proof of ownership is typically established by attaching to a complaint a copy of the Copyright Office registration," *Browne v. Zaslow*, 2015 WL 2069370, at *4, failure to attach the registration is not fatal to Plaintiffs' ownership allegation. Viewing the complaint in the light most favorable to Plaintiffs, the registration on file and Plaintiffs' allegation that "Micro Focus IP Development Limited is the copyright claimant and successor in interest by way of valid assignments," (D.I. 1 at 1, ¶ 2), are sufficient factual allegations (at least as to Micro Focus IP Development Limited) for pleading the ownership.

### 3. Sufficient Identification of Protectable Expression

Defendant also argues that Plaintiffs' allegations that ISO made unauthorized copies of its proprietary "runtime software code" failed to identify the "original elements" of any software program worthy of copyright protection, which renders the pleading insufficient. (D.I. 6 at 6; *see* D.I. 1 at 10, ¶¶ 56-57).[1] However, Defendant's "original element" theory is not the correct standard. For purposes of Rule 12(b)(6), a complaint only needs to allege specific original works are the subject of the copyright claim. *Key Consolidated 2000*, 432 F. Supp. 2d at 488. In the present case, Plaintiffs identified Application Server embedded in CEP as the original work in question, (D.I. 1 at 10, ¶ 57), and this is sufficient to survive a motion to dismiss.

I will thus deny Defendant's motion to dismiss the copyright infringement claim with regards to Application Server.

### IV. CONCLUSION

---

[1] Defendant bases its argument on *Dun & Bradstreet Software Servs, Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 214 (3d Cir. 2002), which held that certain content of an allegedly infringed program "that might have been dictated by external factors may not be subject to copyright protection." However, *Dun & Bradstreet* is about an appeal from a judgment and did not address pleading standards.

9

For the aforementioned reasons, Defendant ISO's motion to dismiss is **GRANTED-IN-PART**. With respect to Counts I and II, the motion is **DENIED**. With regards to Count III, the motion is **GRANTED** as to Net Express and **DENIED** as to Application Server. A separate order, consistent with this Memorandum Opinion, will be entered.