IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICRO FOCUS (US), INC. and MICRO FOCUS IP DEVELOPMENT LIMITED,<br><br>Plaintiffs;<br>v.<br>INSURANCE SERVICES OFFICE, INC.,<br><br>Defendant. | Civil Action No. 15-252-RGA |

## MEMORANDUM OPINION

J. Clayton Athey, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, DE; Hugh J. Marbury (argued), Ryan P. Bottegal, COZEN O'CONNOR, Washington, DC; Stuart M.G. Seraina, BALDWIN SERAINA, Baltimore, MD,

Attorneys for Plaintiffs.

Brian Lemon (argued), MCCARTER & ENGLISH, LLP, Wilmington, DE; Scott S. Christie (argued), MCCARTER & ENGLISH, LLP, Newark, NJ,

Attorneys for Defendant.

September 7, 2021


ANDREWS, U.S. DISTRICT JUDGE:

Before the Court is Defendant's Motion for Summary Judgment. (D.I. 264). I have considered the parties' briefing. (D.I. 265, 269, 281). I heard oral argument on July 16, 2021. (D.I. 284).

## I. BACKGROUND

The Micro Focus Plaintiffs brought suit against Defendant Insurance Services Office alleging breach of contract and copyright infringement. (D.I. 1 at 2). I previously dismissed Plaintiffs' copyright infringement claim. (D.I. 275). All that remains are breach of contract claims based on Plaintiffs' allegations that Defendant breached the End User License Agreements ("EULA" or "Asserted Contracts") that governed the use of Plaintiffs' software products. (D.I. 24 at 9-10).

Plaintiffs allege that Defendant breached these EULAs by using Plaintiffs' software products, developing two applications, and sending the applications to third parties without securing the necessary licenses. (*Id.*). Specifically at issue are Plaintiffs' software products Net Express version 3.1.11 Service Pack 1 ("NX v.3.1.11 SP1") and Net Express version 5.1.00 ("NX v.5.1.00"), which Defendant allegedly uses in its Company Edit Package ("CEP") and ClaimSearch Israel ("CSI") applications. Plaintiff alleges that (1) CEP's use of NX v.3.1.11 SP1 breaches the terms of the G1 EULA, and (2) CSI's use of NX v.5.1.00 breaches the terms of the MF13 EULA.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely

disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

### III. ANALYSIS

Defendant sets forth a litany of arguments for why summary judgment is warranted. Defendant argues (1) the Asserted Contracts do not include essential terms as the applicable Product Orders do not exist, meaning that the license fees and type of license are not identified, and therefore there was no meeting of the minds; (2) Plaintiff has not proven acceptance of the Asserted Contracts; (3) even if the Asserted Contracts were accepted, there is no evidence that authorized persons accepted them; and (4) the Asserted Contracts are unenforceable under the Statute of Frauds. (*Id.* at 8-18).

#### A. The Applicable Contracts

Defendant maintains that Plaintiffs' claims are based on the wrong governing EULAs. Defendant argues that CEP's use of NX v.3.1.11 SP1 is governed by the NE-30 EULA, and CSI's use of NX v.5.1.00 is governed by the MF03 EULA. (*Id.* at 4-5). Defendant contends that these older EULAs govern CEP's and CSI's use of Net Express. In Defendant's view, since Plaintiffs' theories of breach are based on the later G1 and MF13 EULAs, and they are the wrong ones, Plaintiffs' case fails.

Plaintiffs counter that when Defendant updated the New Express products, it entered into new EULAs. Defendant used NX v.3.1.11 SP1 with CEP and is therefore subject to the G1 EULA. (D.I. 269 at 6, 8). Similarly, Defendant used NX v.5.1.00 in connection with CSI and its use of that product is governed by the MF13 EULA. (*Id.* at 8). Plaintiffs argue that Defendant knowingly accepted the G1 EULA and the MF13 EULA at the time of the updates and is therefore bound by their terms. (*Id.* at 8, 13).

There are significant factual disputes that prevent the granting of summary judgment on this ground. There is evidence, from which a reasonable jury could conclude, that Defendant

4

installed the software products at issue and, when it did so, agreed to the EULAs asserted by Plaintiffs. Witness testimony, which a jury may or may not credit, supports Plaintiffs' allegations that Defendant used NX v.3.1.11 SP1 and NX v.5.1.00 and is subject to the terms of the Asserted Contracts. (D.I. 269, Exh. 1 at 2 of 482; *id.*, Exh. 7 at 131 of 482).

### B. The Essential Terms

Defendant argues that there was no mutual assent to the Asserted Contracts as essential terms, the Product Orders, are not present in the contracts. (D.I. 265 at 8). Specifically, Defendant contends that without the Product Orders, there is no evidence of consideration for the contract or the type of license covered by the contract. (*Id.* at 8-9). Plaintiff counters that all essential terms are present in the Asserted Contracts as the "only contract terms material to this action are contained in the Grant of License in Section 1 of the Relevant EULAs, which applies irrespective of any product order." (D.I. 269 at 17). Plaintiffs identify the relevant G1 and MF13 EULA provisions that cover the deployment of the software and maintain that these are the contract provisions at issue. (*Id.*) Further, Plaintiffs point out that Defendant contends that the NE-30 EULA governs its use of NX v.3.1.11 SP1, but that no Product Orders for that EULA was produced in this litigation. (*Id.* at 16). Plaintiffs assert that Defendant "cannot have it both ways," as they cannot argue that product orders are essential terms for the G1 EULA, while contending that the NE-30 EULA, for which no product orders have been produced, governs. (*Id.* at 16).

There is sufficient evidence from which a reasonable jury could find that there was mutual assent and that the parties intended to be bound to the Asserted Contracts. "Under Delaware law[,] a contract 'comes into existence if a reasonable person would conclude, based on the objective manifestations of assent and the surrounding circumstances that the parties

5

intended to be bound by their agreement on all essential terms.'"[1] *Rohm & Haas Electronic Materials, LLC v. Honeywell Intern.*, Inc., 2009 WL 1033651, at *5 (D. Del. Apr. 16, 2009) (quoting *The Intellisource Grp., Inc., v. Williams*, 1999 WL 615114 (D. Del. Aug. 11, 1999)). Here, a reasonable jury could find from the parties' objective manifestations of assent and the surrounding circumstances that the parties intended to be bound by the Asserted Contracts.

The terms of both the G1 EULA and the MF13 EULA state, "Each Product Order shall constitute a separate agreement and shall incorporate therein all of the terms and conditions of this License Agreement." (D.I. 269-1, Exh. 1 at 2 of 482; D.I. 265-1, Exh. K at 200 of 253). A reasonable jury could find that the EULAs and Product Orders were separate agreements and that the parties treated them as such. For instance, despite there being no Product Orders, the parties' business relationship lasted years. The record demonstrates that Defendant first purchased Plaintiffs' software in 1999 (D.I. 265-1, Exh. A at 12-13 of 253), and continued installing, updating, and using Plaintiffs' software for years. (*See* D.I. 265-1, Exh. D at 83 of 253; D.I. 265-2, Exh. BB at 138 of 138). A reasonable jury could conclude that this continuing business relationship is an objective manifestation of assent by the parties to be bound to the Asserted Contracts. From this, a reasonable jury could find that Defendant was still bound by the "Grant of License" sections in the relevant EULAs, despite there being no Product Orders.

As a reasonable jury could find that the parties mutually manifested assent to the Asserted Contracts, Defendant's motion for summary judgment on this ground is denied.

### C. Acceptance of the Asserted Contracts

#### 1. G1 EULA

---

[1] The G1 EULA is governed by Delaware law (D.I. 269-1, Exh. 1 at 5 of 482), and the MF13 EULA is governed by Maryland law (D.I. 265-1, Exh. K at 205 of 253). It appears that for the purposes of this motion the parties agree that there is no meaningful difference between Delaware and Maryland law. For that reason, I will proceed with my analysis solely under Delaware law.

6

Defendant argues that Plaintiffs cannot prove that Defendant accepted the G1 EULA. Defendant argues that it only downloaded NX v.3.1.11 SP1 from the Supportline website, that it was never offered the G1 EULA, and, therefore, it could not have accepted it. (D.I. 265 at 11). Defendant asserts that there is no evidence that it received NX v.3.1.11 SP1 on a CD as there is no way to tell whether the software was downloaded from a CD or from the Supportline website. (*Id.* at 13). Defendant also contends that the evidence does not support Plaintiffs' theory that when Defendant changed versions of Net Express, it must have re-installed it with a CD. (*Id.* at 14). Lastly, Defendant argues that the printed copy of the G1 EULA it produced in discovery provides no evidence as to how Defendant received or installed NX v.3.1.11 SP1 (*Id.* at 14-15).

Plaintiffs argue that Defendant received the G1 EULA and accepted it. (D.I. 269 at 8). Plaintiff contends that Defendant received the G1 EULA in a physical shipment of NX v.3.1.11 SP1 on a CD and accepted the G1 EULA with the installation of the software. (*Id.*). Plaintiffs assert that Defendant accepted the G1 EULA in three ways: (1) through accepting a "shrinkwrap" agreement when it broke the seal within the package that contained a copy of NX v.3.1.11 SP1 and a printed version of the G1 EULA; (2) through accepting a "clickwrap" agreement before software installation; and (3) through accepting a "browsewrap" agreement which was presented in bolded text when Defendant downloaded the NX v.3.1.11 SP1 from the Supportline website. (*Id.* at 8-11). Any one of the three would be sufficient to create a dispute of material fact.

Plaintiffs have established that there is sufficient evidence from which a reasonable jury could conclude that Defendant received and accepted the G1 EULA.

Plaintiffs' corporate designee Susan Z. Drennan testified at deposition that Defendant provided a screenshot to Plaintiffs of the product installed on a certain workstation that "showed

7

Net Express 3.1 service pack one installed." (D.I. 269-1, Exh. 8 at 157 of 482). Ms. Drennan stated that the screenshot revealed that "it's a Micro Focus product which means it would have been physically shipped from Micro Focus." (*Id.*). She also testified that from this screenshot Plaintiffs were able to determine the copyright date of the product and on which physical CD the product would have shipped. (*Id.*). With that determination, Ms. Drennan testified, Plaintiffs were able to reinstall the product from that CD, and "upon re-installation, we saw exactly what we thought we would see, which is that a EULA would come up and it would be accepted. And we see that to be Micro Focus EULA 1, G1." (*Id.*). Ms. Drennan also stated that "this is the same EULA that ISO has in its possession." (*Id.*). She testified that Defendant "received [the G1 EULA]. They installed it. They took note of it. They kept a copy." (*Id.*). From this testimony, a reasonable jury could find that Defendant received the G1 EULA and accepted it via a "shrinkwrap" or "clickwrap" agreement.

Further, Plaintiffs point to a printed copy of the G1 EULA produced by Defendant in discovery as evidence that Defendant received and agreed to it. (D.I 269 at 9). The printed copy of the G1 EULA has handwritten text that reads, "FROM COPY INSTALLED ON IO8340DFJC31," and has the handwritten date "6/19/2002." (D.I. 269-1, Exh. 1 at 2 of 482). It is not disputed that Defendant produced this document in discovery. Defendant's possession of a physical copy of the G1 EULA dated "6/19/2002" is circumstantial evidence that Defendant had the G1 EULA in its possession in June 2002.

From the screenshot of the product on one of Defendant's workstations, the printed copy of the G1 EULA from Defendant, and Ms. Drennan's testimony regarding the screenshot and the document, a reasonable jury could easily infer that Defendant received and accepted the G1 EULA. Plaintiffs have established that there is a genuine issue of material fact as to whether

8

Defendant received NX v.3.1.11 SP1 via a CD and accepted the G1 EULA during the process of installation. It is for the jury to decide whether Defendant accepted the G1 EULA and would therefore be subject to its terms. This disputed material fact prevents the granting of summary judgment. Therefore, Defendant's motion for summary judgment on this ground is denied.

### 2. MF13 EULA

Defendant argues that it did not accept the MF13 EULA for CSI and that it is entitled to summary judgment of no breach of contract on that ground. (D.I. 265 at 10). Defendant contends that CSI used NX v.5.1.09, which is governed by the MF17 EULA, not the MF13 EULA. (*Id.*). Therefore, Defendant maintains, it did not accept, and therefore did not breach, the MF13 EULA. (*Id.* at 10-11). Plaintiffs counter that Defendant installed NX v.5.1 and, in the process, accepted the MF13 EULA. (D.I. 269 at 13). Plaintiffs argue that NX v.5.1.09 was not released until January 2014, years after Defendant installed NX v.5.1, and therefore, Defendant is subject to the terms of the MF13 EULA. (*Id.* at 15).

There is sufficient evidence in the record from which a reasonable jury could find that Defendant accepted the MF13 EULA and is subject to its terms. Testimony from one of Defendant's representatives confirms that Defendant updated to version NX 5.1 in 2008. (D.I. 269-1, Exh. 6 at 113 of 482). Other evidence in the record supports this. Ms. Drennan testified that a physical scan of CSI servers showed NX v.5.1 installed. (*Id.*, Exh. 7 at 131 of 482).

Further, there is evidence that in order for NX v.5.1 to be installed, the person installing the software is presented with, and must accept, the MF13 EULA. In describing the process of installing the MF13 EULA, Ms. Drennan testified that "upon installation of our products, the installer is presented with an end user license agreement and a prompt that would state that upon installing they're accepting the terms of that license agreement. They need to answer

9

affirmatively that they understand that before proceeding with the installation." (*Id.*). From this evidence, a reasonable jury could conclude that Defendant downloaded NX v.5.1 and accepted the MF13 EULA in the process of doing so. Therefore, summary judgment that Defendant did not breach the terms of the MF13 EULA cannot be granted.

### 3. Authority of Persons Accepting the EULAs

Defendant next contends that even if the Asserted Contracts had been accepted, there is no evidence that an authorized individual accepted them. (D.I. 265 at 15). Defendant maintains that a lower-level IT professional would have installed NX v.3.1.11 SP1 and NX v.5.1.09 and would purportedly have clicked-to-accept the Asserted Contracts, and such person would not have been authorized to do so. (*Id.* at 15-16). Plaintiffs argue that not only is it not their responsibility to establish the authority of the installer of the software, but also that Defendant's employees confirmed that they do install software that presents click-to-accept license terms. (D.I. 269 at 18).

There is sufficient evidence in the record from which a reasonable jury could conclude that the person who accepted the EULA had authority to do so. Ms. Drennan testified that Plaintiffs "rely on ISO to determine who has the authority within their company to deal with their own policies," and that Defendant solely determined which of its employees installed the product. (D.I. 269-1, Exh. 7 at 131 of 482). Further, one of Defendant's developers testified that he had installed software obtained by ISO from a vendor, and that he had clicked to accept agreements presented during the installation process. (D.I. 269-1, Exh. 6 at 115-16 of 482). There is sufficient evidence from which a reasonable jury could conclude that an authorized employee of Defendant agreed to the EULAs or that it was not Plaintiffs' responsibility to

10

determine who was accepting the EULAs during the installation process.[2] For this reason, summary judgment on this ground is denied.

### D. Statute of Frauds

Defendant argues that the Asserted Contracts are unenforceable under the Statute of Frauds as they are unsigned. (D.I. 265 at 17-18). Plaintiffs argue that (1) a "clickwrap" license is sufficient to meet the definition of a writing under the Statute of Frauds; (2) there were some transactions between the parties below the minimum price for the Statute of Frauds to apply; and (3) performance is an exception to the Statute of Frauds. (D.I. 269 at 19-20).

There is sufficient evidence from which a jury could conclude that the Asserted Contracts were signed via a "clickwrap" agreement. A "clickwrap" agreement "is an online agreement that requires a 'webpage user [to] manifest assent to the terms of a contract by clicking an 'accept' button in order to proceed.'" *Doe v. Massage Envy Franchising, LLC*, 2020 WL 7624620, at *2 (Del. Super. Ct. Dec. 21, 2020) (quoting *Newell Rubbermaid Inc. v. Storm*, 2014 WL 1266827, at *1 (Del. Ch. Mar. 27, 2014)). Courts consider clicking to accept a "clickwrap" agreement as a manifestation of assent to the contract. *See id.* at *3. Clickwrap agreements are routinely recognized by courts and are enforceable under Delaware law." *Id.* at *2.

Plaintiffs' evidence in the record shows that prior to installation of both NX v.3.1.11 SP1 and NX v.5.1.00, the person installing the software product is asked to click to agree to the terms of the applicable agreements, in this case, the G1 EULA and MF13 EULA. (D.I. 269-1, Exh. 4 at

---

[2] It is the duty of the company receiving the software to ensure that the employees who click to accept a licensing agreement are authorized to do so. *See Pronto Cash of Florida, Inc. v. Digital Currency Sys., Inc.*, 2006 WL 8432522, at *4 (S.D. Fla. Nov. 28, 2006). It makes sense that the company whose employee clicks on an agreement is in a better position to prevent the risk of an employee accepting unwanted agreements than the company offering the agreements is to determine the authority of the employee to accept an agreement.

56 of 482; *id.*, Exh. 7 at 131 of 482). Should a user not click to accept the agreement, the installation process would not proceed. (*Id.*, Exh. 8 at 152, 155 of 482). As there is evidence that Defendant had NX v.3.1.11 SP1 and NX v.5.1.00 installed, a reasonable jury could find that Defendant accepted the relevant EULAs via "clickwrap" agreements and that the user clicking to accept the agreement manifested the necessary assent under the Statute of Frauds. Defendant's motion for summary judgment is denied on this ground.

## IV. CONCLUSION

Defendant's Motion for Summary Judgment (D.I. 264) is denied. A separate order will be entered.